HONORABLE BARBARA JACOBS ROTHSTEIN

FILED ____ ENTERED
____ LODGED ____ RECEIVED

OCT 29 2001

AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KENYATTO ALLAH and GREGORY LEWIS,

    Plaintiffs,

v.

CITY OF SEATTLE, et al.,

    Defendants

NO. C00-1061R

**PLAINTIFFS' TRIAL BRIEF**

CV 00-01061 #00000139

## I. INTRODUCTION

This is a case about an officer's abuse of authority against two individuals who were acting as Good Samaritans at the scene of an accident. Rather than engaging in a reasonable investigation or considering the many circumstances indicating their innocence, Officer Martin attacked Kenyatto Allah and then Gregory Lewis. Not once during the entire incident did Officer Martin bother to ask Kenyatto, Gregory, or the other bystanders what had happened. When bystanders told him anyway, he disregarded the information. The impetus for this violent conduct was Officer Martin's animus resulting from his prior contact with the Plaintiffs, particularly Kenyatto.

PLAINTIFFS' TRIAL BRIEF -1-

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE (206) 903-8800
FAX (206) 903-8820


## II. FACTS

The factual statement below is taken, nearly verbatim, from Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment of Dismissal of State Law Claims of False Arrest and Outrage Plaintiffs have added only some information regarding damages. For the Court's convenience, Plaintiffs have left the citations to authority in this summary and refer the Court to the attachments to Plaintiffs' opposition brief.

### A. Officer Martin's Prior Contact with Plaintiffs

**Teen Life Center Encounter.** The first encounter between Kenyatto and Officer Martin occurred on November 26, 1997, when Kenyatto was volunteering as a teacher of young kids and teenagers at the Teen Life Center. (Allah Dec. ¶2; Allah Dep. 17/3-4) [1] That day, Seattle Police Department ("SPD") officers entered into the Teen Life Center where Kenyatto was teaching and handcuffed two young children, one of whom appeared to be less than 10 years old. (Allah Dec. ¶3; Allah Dep. 17/4-9). The officers roughly escorted the two children out of the classroom and out of the Teen Life Center. Kenyatto and another concerned staff member at the Teen Life Center followed the officers outside to find out what was going on. (Allah Dep. 17/12-17).

Officer Martin was present outside. Kenyatto and the other staff member, Kwami Garret, expressed concern to Officer Martin about the way the children were being treated. (Allah Dec. ¶4; Allah Dep. 18/6-11; Allah Dec II ¶2). Officer Martin was hostile towards Kenyatto and yelled at him (Allah Dec. ¶5; Allah Dep 17/18-21). Kenyatto told Officer Martin he thought his behavior was aggressive and unnecessary. (Allah Dec ¶6). Making eye contact with Kenyatto and pointing at him, Martin threatened Kenyatto that if he continued to question the officers' conduct, Kenyatto would be

---

[1] In this brief, Plaintiffs cite transcripts from both the criminal trial and depositions taken for this case. Criminal trial transcripts are denoted as "Tr" and deposition transcripts are denoted as "Dep" Pages and lines of the transcripts are denoted by page/line

PLAINTIFFS' TRIAL BRIEF -2-

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE, SUITE 3400
SEATTLE WASHINGTON 98101
PHONE (206) 903 8800
FAX (206) 903-8820

maced and jailed. (Allah Dec. ¶7; Allah Dep 21/4 – 22/17)  When Officer Martin became confrontational and hostile towards Kenyatto, another gentleman present at the scene moved between Kenyatto and Officer Martin to separate them. (Allah Dec II ¶2).

**Reports About Teen Life Center Encounter and Officer Martin's Knowledge Kenyatto Was Behind Them.**  A formal complaint was filed with the SPD about the officers' conduct at the Teen Life Center (Lewis Dec. ¶¶3, 4). Although Officer Martin was among the officers referred to in the complaint, he was not specifically named. (Allah Dec. II ¶3). Officer Martin was aware that a complaint had been filed with the SPD regarding the Teen Life Center incident because he received a phone call from a detective regarding that complaint. (Martin Dep 128/25 – 129/8)

Following the Teen Life Center incident, a meeting transpired between Officer Martin's superiors, Lieutenant Harry Bailey and Captain John Diaz, and several citizens, including Kenyatto and Gregory (Allah Dep 71/6-20)  Kenyatto and the others present specifically identified Martin at that time. (Allah Dec II ¶4)  They told Lieutenant Bailey and Captain Diaz about their concerns regarding Officer Martin's abusive conduct. (Allah Dec. ¶8, Allah Dep. 70/23 – 71/20). Kenyatto personally expressed his concerns (Id.) Gregory handed Captain Diaz a copy of the formal complaint that he and Kenyatto had prepared about the Teen Life Center encounter and told Diaz and Bailey about Martin's improper conduct during that incident. (Allah Dec. II ¶4).

Captain Diaz admits meeting with several individuals, including Kenyatto and Gregory. He also admits being informed of concerns about Martin's conduct and asking Director Bailey to look into the situation. (Diaz Dep. 41/10 – 42/16, 43/4 – 44/2, 45/15-22, 56/2-7, 57/8-12)  Mr. Bailey recalls following Martin based upon complaints and rumors about him. (Bailey Dep. 63/16-20, 90/10-17). Officer Martin was aware of these complaints because the SPD's policy is to notify officers of complaints against them, and Diaz told Officer Martin about Bailey's investigation. (Diaz Dep. 46/22-
PLAINTIFFS' TRIAL BRIEF                    -3-

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE (206) 903 8800
FAX (206) 903-8820

25, 59/6-8; Seattle Municipal Code §§ 3.28 340, 328.360). Martin admits knowledge of the Teen Life Center complaint. (Martin Dep 128/25 – 129/9). Based upon his confrontation with Kenyatto and his ability to recall the people with whom he has had encounters and/or confrontations, it is reasonable that Martin would recognize that Kenyatto was connected to the complaints against him. (See Martin Dep. 158/13-24).

**Summer 1998 Encounter.** The second encounter between Officer Martin and Kenyatto occurred the summer of 1998, within two months of the September 20, 1998 crash. (Allah Dec. II ¶5) Kenyatto was walking with a friend, when Officer Martin deliberately bumped Kenyatto with his patrol car. Kenyatto turned around, saw Officer Martin get out of his car, grab his friend, and throw him on the hood of the car. Kenyatto again questioned Officer Martin's abusive conduct. (Allah Dep. 144/9-23, 149/7-11). Officer Martin threatened Kenyatto. (Allah Dep. 150/22 – 152/21). After this incident, Kenyatto again complained to Lieutenant Bailey about Officer Martin. (Allah Dec. II ¶5).

**Reports About Summer 1998 Encounter and Martin's Knowledge Kenyatto Had Complained.** Kenyatto complained to Lieutenant Bailey about Officer Martin on numerous occasions. (Allah Dep. 70/23 – 71/20, 156/23 – 157/19). Bailey admits to hearing complaints about Martin before September 20, 1998, from certain African-American men in the community – concerns that gave Lieutenant Bailey the impression that Martin was being "unusually heavy-handed when making arrests of African-American males." (Bailey Dep. 60/7 – 63/14, 81/20-25). Mr. Bailey's concerns were such that he took it upon himself to follow Martin on his calls. (Bailey Dep. 63/16-25, 65/4 – 66/5). Again, given these facts, the SPD's policy of notifying officers of complaints, and Martin's recollection of the individuals with whom he has had encounters, Martin would reasonably know that the man he confronted (Kenyatto) had lodged the complaints.

PLAINTIFFS' TRIAL BRIEF    -4-

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE (206) 903-8800
FAX (206) 903-8820

**Encounter at Garfield Park Minutes Before Crash.** On the afternoon of September 20, 1998, Kenyatto, Gregory, and two other men were exercising at the park outside of Garfield Community Center, which is in the same area as the Teen Life Center. (Allah Tr. 125/9–20; Lewis Tr. 6/25 – 7/12). During that time, Kenyatto noticed a SPD patrol car slowly drive up onto the paved sidewalk area around the park. (Allah Tr. 125/23 – 126/1).

Officer Martin was the sole officer in the patrol car. As he neared the men, he made eye contact with Kenyatto and stared at him. (Allah Tr. 125/23 – 126/23). Kenyatto was wearing sweat pants, was barefooted, and was wearing easily recognized, distinctive dreadlocks. (Allah Dec. II ¶6) Kenyatto recognized Officer Martin from their past encounters, and believes, based upon Martin's unspoken challenge when staring at Kenyatto, that Martin likewise recognized him. (Allah Dec. II ¶8). Finally, Martin moved on and drove off of the sidewalk.

**Martin's Recognition of Kenyatto.** Thus, Officer Martin had three encounters with Kenyatto prior to arresting him on September 20, 1998, and Kenyatto had verbally made clear to Martin on two occasions his view that Martin's conduct was inappropriate. Complaints had been filed against Officer Martin, both formally and informally, as a result of those incidents, and he knew it. (Diaz Dep. 29/23 – 31/8; Martin Dep. 128/25 – 129/22; SMC §§ 3.28.340, 3.28.360). Martin has admitted recalling the encounters and has stated that he remembers anyone with whom he has had a prior encounter or confrontation. (Martin Dep 134/12 – 136/3, 158/13-24; Lewis Dep 91/2-6). Kenyatto has a distinctive appearance, with unusual dreadlocks and a slight build. (Allah Dec. II ¶¶6-7) Officer Martin saw and stared down Kenyatto at the Garfield Park only minutes before the crash. He watched Kenyatto and three other men working out. From these facts, a jury will reasonably conclude that Officer Martin recognized Kenyatto at the park, saw what he was wearing, and saw that he was barefooted. A jury will also reasonably conclude that 15 minutes later, when Officer Martin saw a barefooted, slight man in the

PLAINTIFFS' TRIAL BRIEF -5-

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE (206) 903-8800
FAX (206) 903-8820

same clothes and wearing the same dreadlocks, he recognized the man as the individual who had been working out in the nearby park and who had criticized and complained about him in the past.

B. **September 20, 1998 Car Accident and Subsequent Events**

**The Automobile Crash.** Approximately 15 minutes after the encounter between Kenyatto and Officer Martin at the Garfield Park, Kenyatto, Gregory, and the other two men heard a screeching car, followed by a loud crash. They saw smoke. (Allah Tr. 126/25 – 127/8; Lewis Tr. 9/7-10). Kenyatto and Gregory ran to the crashed car to see if anyone was hurt and needed help. (Allah Tr. 127/15-21; Lewis Tr. 9/16-25). One of the other men ran to the community center to call 911 for help. (Lewis Tr. 9/18-19; Navarro Tr. 106/22-24).

A middle-aged gentleman named Job Melton, who lived nearby at the time, was in his yard speaking to a neighbor when the accident occurred. Mr Melton heard the car screeching up the street and saw it hit a pole. (Melton Tr. 30/9-19) Mr. Melton went inside his home and called 911 while he watched the scene through his window. (Melton Tr. 58/7-9). As Mr Melton was speaking to the operator, he saw two kids leave the crashed car. He told the operator. After concluding his call, Mr. Melton ran to the scene of the accident. (Melton Tr 45/ 11-17). Another individual, Anthony Barnes, also witnessed the accident, called 911, and watched the scene unfold. (Barnes Tr. 94/5-10).

In the meantime, upon reaching the crashed car, Kenyatto and Gregory found an injured juvenile in the front passenger seat, pinned against the dash of the car. (Lewis Tr. 11/4-7). His seat had been thrown forward and his air bag had deployed. (Lewis Tr. 11/13-20). He was bloody, having trouble breathing, and seemed to be going into shock. (Lewis Tr 11/8-10). Kenyatto entered the car through the left back seat and attempted to release the passenger's seat to give him room to breathe. (Allah Tr. 127/10 – 128/3). Gregory talked to the passenger through an open window. (Lewis Tr. 11/6-8). The older gentleman who had been visiting with Mr. Melton in his yard cut the passenger's seat belt. (Allah

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE (206) 903-8800
FAX (206) 903-8820

1  Tr. 128/5-8, Lewis Tr. 12/20-21, 56/5-9). When Gregory saw the medics arrive, he told Kenyatto who

2  began to back slowly out of the vehicle (Allah Tr. 128/7-19; Lewis Tr. 15/3-5).

3  **Officer Martin's Arrival on the Scene.** The incident was dispatched at 1523 (3:23 p.m.) as a

4  single vehicular accident in which the car had hit a wall, and from which two juveniles, one wearing red,

5  had fled, heading north. (Ex. 1("CAD sheet")). Officer Martin was the first officer to arrive on the scene

6  and was there approximately 30-35 seconds after receiving the dispatch. (Martin Dep. 6/15, 8/13-20;

7  Martin Tr. 99/20-22)  There was no information regarding the status of the car at that time. (See Ex 1).

8  Notably, information on the CAD sheet, which shows the timing of the calls to dispatch and the call-in

9  on the car's license plate, is a running log that cannot be revised after the fact. (Martin Dep 102/17-23)

10

11  **Officer Martin Sees and Recognizes Kenyatto.** Officer Martin pulled up very quickly and saw

12  Kenyatto backing, seat first, out of the back seat of the car. He stopped his car behind the crashed

13  vehicle only a few feet away from where Mr. Melton was standing. (Melton Tr. 51/19 – 52/8; Lewis Tr.

14  40/22-24; Martin Dep. 15/7-22). Based upon their encounter minutes before the accident and their past

15  confrontations, Officer Martin recognized Kenyatto. See supra, Part A. He saw that Kenyatto was

16  barefooted when he was backing out of the car. (Martin Dep. 18/3-11).

17  **Officer Martin Arrests Kenyatto.** Officer Martin jumped out of his car and pursued Kenyatto,

18  grabbing him right after he backed out of the car. (Melton Tr 36/7-9, 46/18-21; Lewis Tr. 36/24 – 37/2).

19  Specifically, Officer Martin grabbed Kenyatto's right arm, twisted it behind his back, lifted Kenyatto off

20  the ground, and slammed Kenyatto on to the hood of the crashed car, face-first. (Allah Tr. 128/22 –

21  129/11; Lewis Tr. 16/19-21)  Mr. Melton, who was standing only a few feet away, observed Officer

22  Martin grab Kenyatto. It was clear to Mr Melton that Officer Martin recognized Kenyatto (Melton

23  Dec. ¶3).

24

25  When Officer Martin grabbed Kenyatto, he put Kenyatto under arrest specifically for auto theft

PLAINTIFFS' TRIAL BRIEF            -7-

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE (206) 903-8800
FAX (206) 903-8820

Officer Martin testified to this at the criminal trial and in the morning portion of his deposition. (Martin Tr. 80/16-24, 81/12 – 82/4, 100/11-14; Martin Dep 21/22 – 22/9, 24/5-12, 30/17-22). Officer Martin did not have probable cause to arrest Kenyatto for auto theft  See RCW 9A.56.070; Rohde v. City of Roseburg, 137 F.3d 1142, 1144 (9th Cir. 1998).

Officer Martin did not initially ask anyone present at the scene what had happened. Martin did not ask Kenyatto anything before the contact, during the contact, or after Kenyatto was released. When witnesses told Martin that Kenyatto was innocent, Martin did not ask them any questions either. (Martin Dep. 27/24 – 28/6, 36/4-8, 42/16 – 43/12, 111/24 – 112/4; Martin Tr. 110/1-9). Martin did not check on the injured passenger. (Martin Dep 13/1-22).

Martin had no basis to believe Kenyatto was one of the juveniles who had fled. (Lewis Tr 41/9-10, Martin Dep. 27/24 – 28/4, 47/10-19)  At the criminal trial, Officer Martin testified that he had arrested Kenyatto for auto theft because (1) he had seen Kenyatto exit a stolen car and (2) he was barefoot. (Martin Tr. 80/16-24).

As a matter of police record, Officer Martin did not know the car was stolen when he grabbed Kenyatto. Officer Martin did not learn this until after he called in and received information on the license plate. (Martin Tr. 81/3-9, 87/8-10). The CAD sheet shows that Officer Martin did not call in the license plate of the vehicle until 1526 (3:26 p.m.), at least a full three minutes after the initial dispatch and two minutes after Officer Williams had arrived – which was after Martin had already arrested and then released Kenyatto. (See Ex. 1; Williams Dep 84/5-24). Furthermore, Officer Martin admits that in over 15 years on the force, and after over 1,000 arrests, he does not recall ever arresting a barefoot car thief. (Martin Dep. 25/16-17, 46/20 – 47/9, 63/5-9).

When Officer Martin grabbed Kenyatto, the bystanders present at the scene immediately told Martin that Kenyatto was just trying to help the injured passenger and had done nothing wrong. (Melton

PLAINTIFFS' TRIAL BRIEF    -8-

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE  (206) 903 8800
FAX  (206) 903-8820

Tr. 36/12 – 38/6; Allah Tr. 129/14-16; Williams Dep. 72/23 – 73/2, Lewis Tr. 16/25 – 17/24, 20/3-5; Martin Dep 30/10-16, 154/4-7, Martin Tr. 110/10-13; Nakanishi Tr. 202/10 – 203/1). Officer Martin admits hearing and understanding the information these people gave him, even when he was initially slamming Kenyatto onto the hood of the car. (Martin Dep 154/4-7, 34/4 – 36/6). Despite all this information, Martin continued the arrest and did not stop to ask any questions. (Id.) Ignoring his experience, the circumstances of the accident, his recognition of Kenyatto from the nearby park only minutes before the crash, and the information he received from the bystanders, Officer Martin continued to ram Kenyatto against the mangled hood of the car. (Melton Tr. 36/19-21, Lewis Tr. 18/7-9, 20/6-13)

Officer Williams was the second officer to appear at the scene, arriving at 1525 (3:25 p.m.) (Ex.1; Williams Dep. 6/9-11, 11/1-8). Officer Martin had already arrested Kenyatto and held him at the hood of the car when Williams arrived Williams joined Martin to assist him. (Martin Dep. 30/23 – 31/2; Williams Dep 11/20-23). The crowd was still telling the officers that Kenyatto had done nothing wrong. (Melton Tr. 39/21 – 40/13; Martin Dep. 31/22 – 32/3, 34/8-25). When Officer Williams heard the crowd's protests, he confronted Officer Martin and Kenyatto was allowed to go free. (Allah Tr 129/25 – 130/4)

Kenyatto then walked toward the front of the car, away from Martin, and toward the rest of the crowd in order to allow the paramedics to do their job. (Allah Dec. II ¶9; Allah Tr. 130/5-16). Doing so is in accordance with the training Kenyatto has received through the Red Cross. (Allah Dec. II ¶9) Kenyatto did not run away (Martin Tr. 100/4-8).

**Demeanor of Bystanders.** When Officer Martin arrived on the scene, the crowd was not chaotic, nor did it pose any danger to Officer Martin or others. Gregory, Kenyatto, and Mr Melton's friend were attempting to help the injured passenger, and other neighbors were watching the scene unfold. Even after Officer Martin's abusive conduct, the bystanders merely yelled to tell Officer Martin

PLAINTIFFS' TRIAL BRIEF    -9-

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE (206) 903-8800
FAX (206) 903-8820

he was assaulting an innocent man. None of the bystanders physically interfered with what Officer Martin was doing when he arrived or with Officer Williams when he joined Officer Martin. (Melton Tr 53/13 – 54/8; Nakanishi Tr. 202/10 – 203/1).

One officer whose primary involvement at the scene of the accident was to monitor the crowd testified that the bystanders were not aggressive. (Haviland Dep. 13/24 – 14/3, 22/14 – 23/2). He described the crowd that day as a typical gathering of bystanders similar to any other accident scene. (Haviland Dep. 10/13-14, 22/3-5). Even Officer Martin admits the crowd was not riot-like. (Martin Dep. 166/10-14)

**Officer Martin's Illegal Seizure of Gregory.** After Kenyatto was released, Gregory explained to Officer Williams what had happened  Gregory and Officer Williams estimate that they talked for about three to four minutes. (Lewis Tr. 19/10-15, 21/21-24; Williams Dep. 56/23 – 57/7). Martin heard Gregory's explanation, because he was only three to four feet away, easily within earshot, and Gregory was speaking loudly. (Lewis Tr. 22/6-22, 43/6-8). Officer Martin was pacing a couple of steps, back and forth. (Lewis Dep. 72/5-17).

Then, without warning, Officer Martin suddenly ran past Gregory and Officer Williams, towards Kenyatto, yelling at him. (Lewis Tr. 23/2-21, 56/10-18). The record is unclear why Officer Martin suddenly lost control. Consistent with his previous conduct, Martin asked no questions after Officer Williams and Gregory talked. He instead used physical aggression (Martin Dep. 112/22 – 113/7, 118/7). Significantly, Kenyatto had not gone anywhere and was making no attempt to flee. (Martin Tr 100/4-8). Like the rest of the crowd, he was watching the paramedics and police officers try to get the injured passenger out of the car, and watching Gregory explain the events to Officer Williams. (Allah Tr. 130/5-16; Allah Dec. II ¶10).

Gregory heard Officer Martin's threat against Kenyatto and saw him move aggressively toward

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE (206) 903-8800
FAX (206) 903-8820

Kenyatto. Gregory ran up alongside of Officer Martin in disbelief, yelling at Officer Martin because he had just explained what had happened. Gregory did not step in front of Officer Martin or block his path. (Lewis Tr. 23/1 – 24/10, 63/23 – 64/13). Nor did Gregory wave his arms or impede Officer Martin in any way (Id., Lewis Dec. II ¶¶2-4). He simply criticized Officer Martin's abusive and unwarranted conduct.

Rather than responding verbally to Gregory or ignoring him, Officer Martin pivoted and grabbed Gregory by the throat. (Lewis Tr. 24/1-17; Allah Dep. 123/4) A chokehold is considered by the SPD to be the use of lethal force because it cuts off the subject's oxygen (Martin Dep. 138/20 – 140/5, Ex 2, SPD Policies and Procedures [hereinafter "SPDPP"] § 1.145).

Feeling shocked to have his air cut off and be lifted backwards, and believing Officer Martin was trying to kill him, Gregory reacted by slapping Officer Martin's hand away from his throat. (Lewis Tr. 25/19 – 26/25, 27/3-4). After hitting Officer Martin's hand away, Gregory backed up and put his hands up in an open position. (Lewis Tr. 27/7-21) Officer Martin lunged at Gregory's head. (Lewis Tr. 28/8-16). In defense against this, Gregory, who was still trying to move backwards, kicked Officer Martin with his left foot. (Lewis Tr. 28/19 – 29/3). Officer Martin attacked Gregory a third time, grabbing Gregory's hips, lifting him up, and pushing him back onto the retaining wall   Officer Martin then put both of his hands around Gregory's neck and began to choke him, cutting off his air supply. (Lewis Tr 29/8-23, 30/11). Gregory was very certain that Officer Martin was trying to kill him  (Lewis Tr 30/7-8). Gregory wrapped his hands behind Officer Martin's neck and head-butted him twice. (Lewis Tr. 30/14-16). This defensive action caused Officer Martin to release Gregory's neck, but then Officer Martin grabbed Gregory's hips, pulling him off of the retaining wall.

Officer Williams then grabbed Gregory's ankles, pulled him down, and pinned him to the ground. Officer Williams then ordered Gregory to roll over  Gregory said okay and obeyed the order

PLAINTIFFS' TRIAL BRIEF   -11-

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE (206) 903 8800
FAX (206) 903-8820

(Lewis Tr. 31/12 – 32/7). Gregory was handcuffed, arrested, and placed in the back of a police car. (Lewis Tr. 32/8-13). Gregory believes that his actions were absolutely necessary in defense against Officer Martin. (Lewis Tr. 36/5-7)

While Officer Martin accosted Gregory, Kenyatto tried to approach and tell Martin that he and Gregory were only there helping the injured young man. (Allah Tr 132/19 – 133/6). Nonetheless, at least one officer controlled Kenyatto. Kenyatto tried to step out of the officer's way several times, but the officer continued to step in the same direction. When the officer and another officer then gestured as if to unsnap their gun holsters, Kenyatto believed they were going to shoot him. Kenyatto ran. (Allah Tr. 133/20 – 134/18).

Several officers pursued Kenyatto. Still barefoot, and having run no more than one block, Kenyatto stopped, sat down, and attempted to pry a piece of broken glass out of his foot. (Allah Dep. 130/18 – 131/22). The police officers handcuffed Kenyatto and placed him in the patrol car (Allah Dep. 132/8-14). Kenyatto and Gregory were transported to the East Precinct and placed in holding cells (Lewis Tr. 34/18-20).

**Officer Martin's Threats.** Officer Martin came to Gregory's cell. He announced to Gregory that Gregory's life had changed forever and that any time he is stopped in the future, a red flag is going to come up saying that he is someone who assaults police officers. Officers would now deal with him decisively. (Lewis Tr. 34/18-20, 35/13-16; Martin Dep. 71/10 – 72/15). Officer Martin also warned Gregory that he was bigger than Gregory, that he was stronger than Gregory, and that he would slap Gregory down and knock him out. He told Gregory he had a book in his pocket with names of people who have assaulted him and that he never forgot a face. He recommended to Gregory to move out-of-state or possibly out of the country. (Lewis Dep. 90/24 – 91/7). Even at this point, Officer Martin was plainly determined to dominate and inflict fear in the hearts of Gregory and Kenyatto.

PLAINTIFFS' TRIAL BRIEF -12-

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE (206) 903-8800
FAX (206) 903-8820

Gregory was stunned at the events. Gregory spoke up only to ask what it meant to hinder an officer and to request an attorney. (Lewis Tr 52/24 – 53/14; Martin Dep 67/9-13). Kenyatto, who was in a nearby holding cell, heard Officer Martin's lecture and threats. (Allah Dep. 42/6-20).

**Criminal Prosecution and Acquittal.** Kenyatto and Gregory were prosecuted on the following criminal charges: Kenyatto for obstruction, resisting arrest, and assault; Gregory for obstruction and assault. (See Ex. 3). After a seven-day trial, Kenyatto and Gregory were both acquitted on charges of assault and obstructing a public officer. The jury hung on the resisting arrest charge against Kenyatto, and the City did not re-try that charge against him. (Id.).

Kenyatto was never charged with auto theft. This is so because there was never – not at the time of the arrest or any point after that – probable cause to make such a charge.

**Officer Martin's Mode of Operation and Protection of the Record.** Officer Martin is not sorry and does not regret anything he did to Gregory or Kenyatto on the day of the accident. (Martin Dep. 72/16-19). Officer Martin claims he was justified in slamming Kenyatto into the car, even though Kenyatto was the wrong person and the crowd was telling him Kenyatto was the wrong person. (Martin Dep. 154/12-15). In fact, Officer Martin says his mode of operation is to arrest first and ask questions later (Martin Dep. 168/1-12)

As the primary officer at the scene, Officer Martin was responsible for investigating and preparing reports of the incident. (Emery Tr. 64/3-8; Martin Dep 155/15-17; Ex 2, SPDPP §§ 2 001, 3.029). Officer Martin admits there were numerous witnesses at the scene and that he spoke with approximately 10 to 15 people. (Martin Dep. 79/4 – 91/10). He also admits that some of the people he talked to were upset about the arrests of Kenyatto and Gregory. He further admits knowing that several people called the police department to complain about the incident. Nonetheless, despite his obligation to do so, he never bothered to take a single statement or report from the civilian witnesses to the

PLAINTIFFS' TRIAL BRIEF    -13-

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE, SUITE 3400
SEATTLE WASHINGTON 98101
PHONE (206) 903-8800
FAX (206) 903-8820

incident. (Martin Dep. 79/20-22, 85/20 – 86/8, 87/21 – 88/7, 89/20-22, 90/13 - 91/10, 92/1-24). The only individuals from whom Officer Martin took statements or reports were other police officers. (Martin Dep 91/8-10). The jury will reasonably conclude that Martin was protecting the record, assuring that his illegal conduct was never noted formally in the file.

A.   **Plaintiffs' Damages.**

**Physical Damages.** Plaintiffs both suffered physically at the hands of Officer Martin on September 20, 1998. Officer Martin seized these individuals with force, causing them pain at that time and stiffness and soreness afterwards. Gregory was caused pain when Officer Martin put him in a chokehold. (Lewis Tr. 24/1-17, 29/8-23, 30/11, Allah Dep. 123/4)  As a result of the assault by Officer Martin, besides suffering pain at the time, Kenyatto suffered scars on his hands, scratches on his face and forehead, back pain, and numbness in his legs. (Allah Dep. 28/21-25, 29/1-7, 37/14-25, 38/1-14, 49/17-25, 50/1-13, 109/11-21). These damages are compensable under both federal and state law

**Severe Emotional Distress.** As a result of Martin's conduct and threats, Plaintiffs have suffered and continue to suffer severe emotional distress. They live in constant fear that their lives are in danger. (Allah Dep. 29/13-15; Lewis Dep. 105/1-2). Kenyatto's fears extend to the safety of his children and his mother. He believes his parents now fear for their safety, which adds to his distress. (Allah Dep 29/3, 29/11-12). Kenyatto suffers from vivid nightmares as a result of his experience with Officer Martin (Allah Dep. 29/6-8). Gregory suffers sleeplessness and anxiety. (Lewis Dep. 110/3-4). Kenyatto's mother and both men's friends have noted dramatic changes in Plaintiffs, indicating severe emotional distress. (McThomas Dec. ¶¶ 3-15; Majors Dec. ¶¶ 3-9; Holmes Dec. ¶¶ 2-12). Kenyatto believes his friends avoid him because they are afraid that Officer Martin's threats of future abuse will ring true. (Allah Dep. 29/11-13). In essence, Martin maliciously stripped Plaintiffs of their belief that they, like other citizens of the United States, have a right to speak, a right to full citizenship, and a right to be

PLAINTIFFS' TRIAL BRIEF          -14-

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE SUITE 3400
SEATTLE WASHINGTON 98101
PHONE (206) 903 8800
FAX (206) 903-8820

protected by the police. Instead, Officers of the Law present a potent, and fully demonstrated, danger

**Punitive Damages.** The evidence will also demonstrate that punitive damages are warranted. Officer Martin acted with willfulness and malice toward Kenyatto. He had had prior encounters with Kenyatto and was aware that Kenyatto has raised concerns about Officer Martin's inappropriate conduct. (Allah Dep 18/6-11, 144/9-23, 149/7-11; Allah Dec. ¶4; Allah Dec II ¶¶2, 5, Martin Dep 128/25-129/9). Officer Martin recognized Kenyatto exercising at the park on September 20, 1998, only minutes before the car accident, and as the individual who had criticized him and complained about him. (Allah Dec. II ¶8) When he saw Kenyatto backing out of the back seat of the car, Officer Martin recognized an opportunity to retaliate against Kenyatto. Officer Martin seized that opportunity. This conduct was willful and malicious

However, Plaintiffs do not need to prove that Officer Martin was motivated by malice or evil intent. "[R]eckless or callous indifference to the federally protected rights" of Plaintiffs is enough. Smith v. Wade, 461 U.S. 30, 56 (1983) In this case, even if Officer Martin had not recognized Kenyatto, Officer Martin acted in reckless disregard of Kenyatto's federally protected rights when he forcefully arrested Kenyatto despite all of the evidence indicating that Kenyatto was an innocent Good Samaritan.

Officer Martin's conduct against Gregory was similarly malicious and in reckless disregard of Gregory's rights. Once Officer Martin realized Gregory was affiliated with Kenyatto, Officer Martin viewed Gregory as the enemy. When Gregory yelled at Officer Martin, Officer Martin totally lost control. (Lewis Tr. 24/1-17; Allah Dep. 123/4). He engaged in an all-out attack, seriously threatening Gregory's life. (Lewis Tr. 29/8-23, 30/7-8, 11; Martin Dep. 138/20-140/5; SPD Policies and Procedures § 1.145). This conduct supports an award of punitive damages.

PLAINTIFFS' TRIAL BRIEF   -15-

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE, SUITE 3400
SEATTLE WASHINGTON 98101
PHONE (206) 903-8800
FAX (206) 903-8820

## III. CLAIMS

The evidence Plaintiffs will adduce at trial will prove their claims and compensatory damages Specifically, they will prove the following.

- **False Arrest:** While acting under color of law, Officer Martin restrained Plaintiffs without probable cause to do so. Jacques v. Sharp, 83 Wn. App 532, 536, 922 P.2d 145 (1996).

- **Assault:** Officer Martin intended to and did create an apprehension of imminent harmful or offensive contact with Plaintiffs' bodies or persons, proximately causing damages to the plaintiffs. Brower v. Ackerly, 88 Wn. App 87, 93, 943 P.2d 1141 (1997).

- **Battery:** Officer Martin intentionally caused harmful and offensive contact with Plaintiffs, proximately causing harm to them without their consent. Garratt v. Dailey, 46 Wn.2d 197, 200-01, 279 P.2d 1091 (1955) (adopting Restatement of Torts § 13).

- **Tort of Outrage:** Officer Martin intentionally or recklessly inflicted severe emotional distress by conduct that was extreme and outrageous, causing Plaintiffs' severe emotional distress. Rice v. Janovich, 109 Wn.2d 48, 61, 742 P.2d 1230 (1987).

- **Excessive Force:** While acting under color of law, Officer Martin seized the Plaintiffs and used more force than a reasonable and prudent officer would use under the circumstances, proximately causing injury to Plaintiffs, thus violating Plaintiffs' rights under the Fourth Amendment of the United States Constitution. Graham v. Connor, 490 U.S. 386 (1989); Gulliford v. Pierce County, 136 F 3d 1345 (9th Cir. 1998).

- **Punitive Damages:** Officer Martin acted maliciously or in reckless disregard of Plaintiffs' rights. Smith v. Wade, 461 U.S. 30 (1983).

The testimony at trial will prove all of these claims

PLAINTIFFS' TRIAL BRIEF    -16-

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE (206) 903-8800
FAX (206) 903-8820

## IV. EVIDENTIARY ISSUES

**A. Evidence Regarding Officer Martin's Former Contact With Plaintiffs and Plaintiffs' Complaints Regarding Officer Martin is Admissible to Establish Officer Martin's Motivation for His Illegal Conduct and the Issue of Probable Cause is Relevant to the Issues Before the Court.**

Defendants appear to take the position that much of Plaintiffs' evidence is irrelevant as a result of the Court's August 7, 2001, Order Granting In Part and Denying In Part Defendants' Motion For Partial Summary Judgment. Defendants seek to exclude evidence regarding prior complaints by Plaintiffs concerning Officer Martin and efforts to investigate him, the issue of probable cause, Kenyatto's direct knowledge of Officer Martin's conduct, and the Teen Life Center incident. This evidence remains relevant and probative for the False Arrest and Outrage claims, as well as Plaintiffs' claim for punitive damages. See Fed. R. Evid. 401, 402. Further, because the probative value of the evidence is high and any alleged prejudice is small by comparison and not unfair, the evidence should not be excluded under Rule 403. For a more specific analysis on each evidentiary point Defendants seek to exclude, Plaintiffs respectfully refer the Court to their response to Defendants' Motion in Limine.

**C. Defendants' Nonprobative and Substantially Prejudicial Evidence Should Be Excluded.**

Plaintiffs expect that Defendants will attempt to admit evidence that is unrelated to the claims and defenses of this case. For example, Defendants may focus on Plaintiffs' acquaintance with James C. Garret, also known as Omari Tahir, because Mr. Tahir has allegedly assaulted Mayor Paul Schell Such an association would be irrelevant to the question of whether Officer Martin abused his power and is liable, and it would obviously be highly prejudicial to Plaintiffs. See Fed. R. Evid. 401, 403. It should be excluded.

Similarly, Defendants may try to smear Plaintiffs, for example, by putting in evidence regarding Plaintiffs' community activities, any record regarding Plaintiffs' prior arrests or charges (there are no

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE (206) 903-8800
FAX (206) 903-8820

admissible convictions),[2] evidence that Plaintiffs have changed their names, and the religious and/or social reasons for those changes. Among other things, these facts are highly prejudicial to Plaintiffs, and serve little, if any, probative value. See Fed. R. Evid. 401, 403. Moreover, evidence of other charges or arrests, none of which led to convictions, is evidence explicitly excluded under Fed. R. Evid. 404(b) See also Fed. R. Evid. 609(a) (evidence not admissible for impeachment since there were no convictions). Evidence that Plaintiffs changed their names and any religious reasons therefore is also inadmissible pursuant to Fed. R. Evid. 610. Additionally, evidence regarding Plaintiffs' community activities is inadmissible as impermissible character evidence. Fed. R. Evid 404(a); see also Fed. R. Evid. 608 (evidence not admissible for impeachment purposes since it is not probative of truthfulness)

DATED this 29 day of October, 2001.

DORSEY & WHITNEY LLP

_____
David R. Goodnight, WSBA No. 20268
Richard E. Mitchell, WSBA No. 25940
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101
Telephone: (206) 903-8800
Facsimile: (206) 903-8840

Attorneys for Kenyatto Allah and Gregory Lewis

---

[2] Kenyatto Allah has no prior conviction except a simple misdemeanor for driving without a valid operator's license in August of 2000 This is not admissible under any theory

PLAINTIFFS' TRIAL BRIEF    -18-

DORSEY & WHITNEY LLP
U S BANK BUILDING CENTER
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE (206) 903-8800
FAX (206) 903-8820